**CITY OF WESTLAKE, Appellant,**

v.

**KAPLYSH, Appellee.**

[Cite as *Westlake v. Kaplysh* (1997), 118 Ohio App.3d 18.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70872.

Decided Jan. 27, 1997.

*Bryan P. O'Malley,* Westlake Prosecutor, for appellant.

*Burke, Vanucci & Gallagher* and *James W. Burke,* for appellee.

*Per Curiam.*

Plaintiff-appellant city of Westlake appeals from an order of the Rocky River Municipal Court granting defendant-appellee William M. Kaplysh's motion to suppress evidence.

Kaplysh was charged on May 24, 1996, with operating a motor vehicle while under the influence of alcohol in violation of Westlake Codified Ordinances 333.01(A)(1). Kaplysh was initially stopped for failing to dim his high beam

headlights for oncoming traffic. During the stop, the officer discovered defendant had been drinking alcohol. Kaplysh failed field sobriety tests and subsequently refused to take a breath-alcohol test.

Kaplysh pleaded not guilty to the charge of driving under the influence of alcohol. Contending that the traffic stop was unlawful, Kaplysh thereafter filed a motion to suppress evidence. The matter proceeded to a hearing in the municipal court on June 13, 1996.

Westlake police officer Thomas Cummings was the sole witness to testify during the hearing on the motion to suppress. Officer Cummings testified that he was driving a police cruiser on routine patrol at approximately 2:30 a.m. on May 24, 1996. Driving west on Detroit Road, he stopped his car behind another vehicle at a red traffic light at the intersection of Detroit Road and Bradley Road.

Officer Cummings observed a vehicle driven by defendant approaching east on Detroit Road. Defendant's vehicle approached the intersection with its high beams on and stopped behind another vehicle. After the traffic light changed from red to green, defendant proceeded through the intersection and switched to low beam headlights. The record does not specify the exact time and relative position of the cars. Officer Cummings testified that he observed the bright headlights on defendant's vehicle for at least a minute and had to squint because of the intensity of the light.

Officer Cummings concluded that defendant violated a Westlake ordinance requiring drivers to dim their headlights when they approach oncoming vehicles. As a result, Officer Cummings turned his vehicle around and stopped defendant. When he spoke with defendant, Officer Cummings noticed a strong odor of alcoholic beverage. Defendant subsequently failed a series of field sobriety tests and was arrested for driving while under the influence.

Defendant argued that the Westlake police did not have sufficient grounds to stop him and that all evidence obtained by the police following the stop should be suppressed. In an order journalized June 18, 1996, the municipal court granted defendant's motion to suppress.

Westlake timely appeals, raising the following two assignments of error:

"The trial court committed prejudicial error by improperly applying the law to the facts and by failing to uphold the traffic stop upon evidence of a violation of Westlake Code Section 337.14 (O.R.C. 4513.15).

"The trial court committed prejudicial error by granting the defendant's motion to suppress and failing to sustain the police officer's reasonable articulable suspicion to effect a traffic stop."

These assignments are well taken.

Westlake argues that the municipal court improperly granted defendant's motion to suppress. Westlake argues that the record shows that Officer Cummings properly stopped defendant for violating Westlake Codified Ordinances 337.14, which provides as follows:

"Whenever a motor vehicle is being operated on a roadway or shoulder adjacent thereto during the times specified in Section 337.02, the driver shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons, vehicles and substantial objects at a safe distance in advance of the vehicle, except that *upon approaching an oncoming vehicle, the lights or beams shall be so aimed that the glaring rays are not projected into the eyes of the oncoming driver.* (ORC 4513.15)" (Emphasis added.)

Under the circumstances, we are compelled to agree.

It is well established that a police officer may conduct a traffic stop of an individual driving a motor vehicle when the officer has a reasonable suspicion, based on specific and articulable facts, that a criminal violation has occurred. *State v. Woods* (1993), 86 Ohio App.3d 423, 424–425, 621 N.E.2d 523, 524–525. The officer is not required to prove that the suspect committed an offense beyond a reasonable doubt or even to satisfy the lesser standard of probable cause to believe that defendant violated the law.

It is undisputed that Officer Cummings observed defendant for at least a minute with his high beam headlights illuminated. The case *sub judice* is distinguishable from *Woods* for precisely this reason because the defendant in *Woods* only momentarily engaged her high beam headlights and then resumed driving with her low beam headlights. The court in *Woods* found that such a momentary use of high beam headlights, particularly while on a curve in the road, was insufficient to justify an investigatory stop.

Unlike *Woods,* the facts of the case *sub judice* are sufficient to establish, at a minimum, that the officer had a reasonable suspicion that defendant violated the headlight ordinance. Contrary to defendant's argument, *Woods* does not stand for the proposition that a driver sufficiently complies with the headlight ordinance if he ultimately turns off the high beams before passing a vehicle headed in the opposite direction. Rather, a driver violates the ordinance by continuing to use the high beam headlights of his vehicle "upon approaching" such traffic. The ordinance requires the driver to shift to the low beam lights at the latest when the glaring rays project into the eyes of an oncoming driver. In *Woods,* where the cars were on a curve, the court found that moment to be "at the very instant the approaching car became visible." From the officer's perspective in the case at bar, Kaplysh was well past that point when he dimmed his lights. As the officer testified, "I was forced to squint due to the intensity of the bright lights from the oncoming vehicle."

Defendant's argument that the police cruiser driven by Cummings was not "oncoming" within the meaning of the ordinance, because it stopped at the red light, is unpersuasive. This argument ignores the fact that Officer Cummings's car, as well as the vehicle in front of his, was moving immediately prior to stopping at the traffic light as defendant approached from the opposite direction. The driver of the vehicle in front of the officer's would have been exposed to the glare of Kaplysh's high beam headlights even earlier than was the officer. The officer said (1) he saw the high beams for a period of one to one and one-half minutes, and (2) the red light changed after thirty seconds. Thus for a period of at least thirty seconds to one minute the bright lights of Kaplysh's car would have projected on the officer and even longer on the driver of the vehicle in front while both cars were presumably moving toward Kaplysh.[1] Under the circumstances, the evidence was sufficient to establish, at a minimum, a reasonable suspicion that defendant drove with his high beams illuminated in violation of the ordinance.

The purpose of the ordinance is to promote safety by preventing any unnecessary visual impairment resulting from the glare of high beams—an impairment that could affect a driver whether he be moving at a high speed on a country road or about to stop or start up at an intersection, where pedestrians are likely to cross. The trial court was mistaken when it interpreted the ordinance as not requiring lights to be dimmed until a car *passes* an oncoming vehicle. As *Woods* correctly saw, that glare occurs much earlier and so does the obligation to lower one's beams.

Defendant ultimately contends that the traffic stop for the observed headlight violation was merely a pretext for stopping his vehicle to search for other evidence. However, the United States Supreme Court has recently held, unanimously, that the reasonableness of a traffic stop does not depend upon the motive of the police officer in making the stop. *Whren v. United States* (1996), 517 U.S. 806, —— – ——, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89, 97–98. As a result, even if defendant's argument were true, the existence of a lawful basis for the stop precludes examining the officer's motive for stopping him in this case.

Accordingly, Westlake's two assignments of error are well taken.

The judgment of the municipal court granting defendant's motion to suppress is hereby reversed, and the cause is remanded for further proceedings.

*Judgment accordingly.*

---

1. Officer Cummings was the only person to testify at the suppression hearing, so his account of the facts remains undisputed.

KARPINSKI and STRAUSBAUGH, JJ., concur.

PORTER, P.J., dissents.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, sitting by assignment.

JAMES M. PORTER, Presiding Judge, dissenting.

I must respectfully dissent from the majority opinion for the reason that I find that the officer's stopped vehicle did not constitute "oncoming traffic" as set forth in Westlake Ordinance 337.14.

Westlake Ordinance 337.14 states as follows:

"337.14  USE OF HEADLIGHT BEAMS

"Whenever a motor vehicle is being operated on a roadway or shoulder adjacent thereto during the times specified in Section 337.02, the driver shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons, vehicles and substantial objects at a safe distance in advance of the vehicle, except that upon approaching an oncoming vehicle, the lights or beams shall be so aimed that the glaring rays are not projected into the eyes of the oncoming driver."

According to the similar statute (R.C. 4513.15), a driver must dim the vehicle's high beam lights whenever his "vehicle approaches an oncoming vehicle." The court in *State v. Woods* (1993), 86 Ohio App.3d 423, 621 N.E.2d 523, interpreted the purpose of the similar statute was to "prevent oncoming motorists from temporarily blinding each other and thereby creating a hazardous condition."

Defendant was obviously in the act of "approaching" when the officer witnessed him driving up to the intersection with his high beams on. He was entitled to have his high beams on, as he was coming off a darkened road. The issue comes down to whether the officer's stopped vehicle was an "oncoming vehicle." I believe the word "oncoming" connotes movement. "Coming nearer; approaching * * *." American Heritage College Dictionary (3 Ed.1993), at 953. "A coming nearer in time or space." Webster's Ninth New Collegiate Dictionary (1990), at 824. "It is equally well settled that words used in a statute are to be taken in their usual, normal, and customary meaning. R.C. 1.42." *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 173, 661 N.E.2d 1049, 1051. Criminal statutes "shall be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04. This rule applies to criminal ordinances as well. *Vermilion v. Stevenson* (1982), 7 Ohio App.3d 170, 171, 7 OBR 215, 216–217, 454 N.E.2d 965, 966–967.

The majority states that defendant's argument that the officer's car was not "oncoming" is unpersuasive, as it "ignores the fact that Officer Cummings's car, as well as the vehicle in front of his, was moving immediately prior to stopping at the traffic light as defendant approached from the opposite direction." However, Officer Cummings testified both on direct and cross-examination that he did not see the defendant's high beams until his vehicle was stationary and the defendant dimmed his lights after the light changed, before proceeding through the intersection:

"OFFICER: At this point I had become stationary at the intersection. I observed a vehicle approaching the intersection eastbound on Detroit Road. The vehicle was observed to have a high beam, bright light, front headlight illuminated the entire time that it approached the intersection.

"Upon coming to the intersection, the vehicle stopped for the red light and continued to have its high beam headlights on. After a period of time of sitting there, the vehicle was noted to turn its bright lights off and proceed through the intersection upon the light turning green.

"* * *

"BURKE: Officer, you were already stopped at the light at Bradley and Detroit heading westbound and the vehicle in front of you was already stopped when you first saw the Defendant; isn't that true?

"OFFICER: That is correct.

"* * *

"BURKE: So you are already stopped at the light, it's red, and then you look up and you see the car, his car, the defendant's car, approaching; right?

"OFFICER: That's correct.

"* * *

"BURKE: Your testimony is that when he left the light, he had dimmed— when the light turned green, he dimmed his lights; right?

"OFFICER: That is correct."

The officer on cross-examination also admitted that when he said he was at the light for one minute and a half that it was incorrect, and that it was more like thirty seconds.

Since the vehicles across from defendant were stationary at the light, they were not "oncoming." The officer testified that the defendant flicked his high beams off when the light changed to green. Therefore, his high beams were no longer on when the stationary vehicles began to move toward each other.

Inasmuch as the purpose of the statute is to prevent the hazardous condition of temporarily blinding drivers as their moving vehicles draw nearer, the defendant did not violate the statute. The majority's holding would call for high beams to be lowered even when approaching a driver in a parked vehicle.

The officer admitted at the hearing that the defendant was not doing anything else illegal, *i.e.,* not weaving or speeding, and he had no reasonable suspicion on which to base his stop of defendant's car. Therefore, I would affirm the trial court's order suppressing all the evidence gathered pursuant to the stop.