OPINION
Defendant-appellant Donald E. Letner appeals from his conviction and sentence for Operating a Motor Vehicle While Under the Influence of Alcohol. Letner argues that the trial court erred by: (1) informing the jury, in response to a question from it, that it could convict him on the charge based only upon his having failed one field sobriety test; (2) refusing to allow a witness, his sister, to testify about her observations of him approximately two hours after he was stopped by police; (3) failing to sustain his motion to suppress on the grounds that the arresting officer lacked reasonable suspicion to stop his vehicle; and (4) rescinding its initial order sustaining his motion to suppress, because it lacked authority to make that recission.
We conclude that the trial court did not err by instructing the jurors that it was for them to decide whether a person's failure on a field sobriety test proved his impairment to operate a motor vehicle because the instruction was a correct statement of the law. We also conclude that the trial court did not abuse its discretion by excluding from evidence the proposed testimony of Letner's sister, who would have testified that Letner did not appear to be under the influence of alcohol when she saw him approximately two hours after he had been stopped by police, because of the lapse of time between the stop and her observation of him. We also conclude that the trial court did not err in overruling Letner's motion to suppress. The police had reasonable suspicion to stop Letner's vehicle because it matched the description of a vehicle provided by a 911 caller reporting suspicious actions, and it was spotted several minutes after the call was made, and within one mile of the address of the caller. We further conclude that the magistrate who initially granted Letner's motion to suppress in a ruling from the bench had the authority to reconsider her decision and reverse it where the initial order was not a written decision, had not been formally entered, and was, therefore, merely an interlocutory order. Accordingly, the judgment of the trial court is Affirmed.
 I
In November, 1999, Karen Fecher received a call from her sister-in-law, Deanna Fecher, who lived across the street from her. Deanna, who had her two children (ages 7 months and twelve years) with her, told Karen that she believed that she had been followed home from the movie theater by a man in a full-sized white van with red lettering, who had just pulled into her driveway. Fecher called 911 and relayed the information to a dispatcher at the Beavercreek Police Department, who, in turn, relayed the information to Officer Sandy Price. Within minutes of receiving the call, and within one mile from where the 911 call had originated, Price saw a van matching the description provided by the dispatcher turn from Newton Drive onto North Fairfield Road. Price, who was familiar with area, knew that Newton Drive was the only exit from the neighborhood from where the 911 call had originated. Consequently, Price began to follow the van.
Price observed the van pull into a gas station, circle the lot a couple of times, and then start to exit. As the van pulled out of the lot, Price turned her overhead lights on. The van backed up into the lot and came to a stop. At that point, the driver of the van, Donald E. Letner, got out of the vehicle, stumbled, and had to use the van for support. Price called for backup, and told Letner to return to his van.
After backup officers arrived, Price ordered Letner out of his van and asked him if he had been drinking. Letner replied that he had consumed three beers at a club called the Living Room, and was following a woman home from that bar when he became separated from her en route to her home in Greene County. Price observed that Letner's eyes were red and bloodshot, his speech was "very slurred," and he smelled of a "moderate to strong" odor of alcoholic beverage. Price first administered the horizontal gaze nystagmus ("HGN") test to Letner, who exhibited intoxication in all six of the test's indicators. Next, Price asked Letner to stand on one leg in order to perform a field sobriety test. Letner refused to do the "one-leg" test, explaining that he had previously broken an ankle. Price then asked Letner to walk heel-to-toe for nine steps, turn around, and walk back the same way. According to Price, Letner's performance on the "walk and turn" test was "terrible." Upon concluding that Letner was intoxicated, Price placed him under arrest.
A complaint was filed against Letner in the Fairborn Municipal Court, charging him with one count of Operating a Motor Vehicle While Under the Influence of Alcohol. Letner filed a motion to suppress any evidence gathered by the police in the case. The matter was referred to a traffic magistrate, who held a hearing on the suppression motion on January 25, 2000. The first witness called by the City was Officer Price. When she began to testify about what was said in the dispatch, the magistrate sustained the defendant's objection on hearsay grounds. At that point the City's prosecutor informed the magistrate that as a result of her decision to exclude Price's testimony regarding the dispatch, he no longer could provide a basis for the stop. Consequently, the magistrate announced her ruling from the bench granting Letner's motion to suppress. However, on February 4, 2000, the magistrate issued an "amended decision," wherein she reversed her previous ruling from the bench granting Letner's motion to suppress. Citing Mammee v. Weiner (1999),87 Ohio St.3d 295, the magistrate concluded that she had erred in sustaining the defendant's objection to Price's testimony regarding the contents of the dispatch. Consequently, the magistrate scheduled a new suppression hearing for March 21, 2000. Following that hearing, the magistrate issued a decision overruling Letner's suppression motion in its entirety.
At Letner's trial, Officer Price related the facts mentioned above, except for those regarding Letner's performance on the HGN test. The City also placed into evidence a videotape of Price's stop of Letner, which included Letner's performance on the walk and turn test. Testifying on his own behalf, Letner asserted that he refused to do the one-leg stand test because of his ankle and his trouble balancing, and that he performed poorly on the walk and turn test because of his size and weight (6'2", 270 lbs.). The trial court refused to admit, on relevance grounds, the testimony of Letner's sister, Jacquelyn Nickel, who saw Letner approximately two hours after he had been arrested, and who would have testified that Letner did not appear to be drunk at that time.
After the case had been submitted to the jury, the jury sent the trial court a question, asking, "Does the failure of a field sobriety test prove one's impairment to drive a motor vehicle? What does this mean?" The trial court's response to the question stated, "It may or may not. That is for you the jurors to decide." Letner objected to the trial court's answer, arguing that the jury should have been told that failure on a field sobriety test was a factor to be considered in the "totality of the circumstances" present. The trial court overruled Letner's objection and proposed response on the ground that it "gives them way more information than [the jury was] asking for."
Following their deliberations, the jury convicted Letner of Operating a Motor Vehicle While Under the Influence of Alcohol, and the trial court sentenced him to one year in prison, with one day of the sentence suspended.
Letner appeals from his conviction and sentence.
 II
Letner's First Assignment of Error states:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN, IN RESPONDING TO A JURY QUESTION, IT INFORMED THE JURY THAT IT COULD RETURN A GUILTY D.U.I. VERDICT BASED ON THE FAILURE OF ONE FIELD SOBRIETY TEST.
Letner argues that the trial court erred when it instructed the jurors in response to a question from them that a person's failure on a field sobriety test "may or may not" prove his "impairment" to drive a motor vehicle, and that the question was one for them to decide, because, according to Letner, it "allowed th[e] jury to disregard all the evidence presented, save for the evidence pertaining to the failed field sobriety test." Letner contends that the trial court should have told the jury that a defendant's failure on a field sobriety test "was one of a totality of factors to consider in deciding whether appellant was driving under the influence." We find Letner's contention unpersuasive.
When a jury that has retired to deliberate submits a question to the trial court, the trial court's response, when viewed in its entirety, must constitute a correct statement of the law, consistent with or properly supplementing the jury instructions that have previously been given. See Watkins v. Cleveland Clinic Found. (1998), 130 Ohio App.3d 262,277.
Here, the trial court's response that a person's failure on a field sobriety test may or may not prove his impairment to drive a motor vehicle, and that the question was one for the jury to decide, was a correct statement of the law. While it probably would have been preferable for the trial court to remind the jurors in its answer to their question that they should consider all of the evidence presented in determining whether Letner was guilty of the charge, the trial court had already informed them of their duty to do that several times in its previous instructions to them. The issue is whether the answer given by the trial court constituted an abuse of discretion, not whether the answer proposed by an objecting party might have been a better exercise of that discretion.
Letner's First Assignment of Error is overruled.
 III
Letner's Second Assignment of Error states:
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT REFUSED TO ALLOW A DEFENSE WITNESS TO TESTIFY ABOUT HER OBSERVATIONS OF APPELLANT SHORTLY AFTER HIS ARREST.
Letner argues that the trial court erred by excluding, on relevance grounds, the testimony of his sister, Jacquelyn Nickel, that he did not appear to be drunk when she saw him approximately two hours after his arrest. We disagree.
"`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. A trial court has broad discretion in the admission and exclusion of evidence, and an appellate court must not interfere with its determination "[u]nless the trial court has clearly abused its discretion." State v. Apanovitch (1987), 33 Ohio St.3d 19,25. "The term `abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary, or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157.
Here, the evidence revealed that Letner was stopped at 9:42 p.m., and Nickel did not see him until sometime between 11:30 p.m. and midnight. Therefore, anywhere from one hour and forty-eight minutes, to two hours and eighteen minutes had passed between the time Letner was stopped while driving his van until the time his sister saw him, according to her, sober. If we had been deciding this question in the first instance, we might have admitted Nickel's testimony, allowing the jury to consider the lapse of time in determining what weight, if any, to accord it. However, in light of the broad discretion that a trial court enjoys in the admission or exclusion of evidence, we cannot say that the trial court abused its discretion in excluding the testimony of Nickel, given the considerable lapse in time between the moment Letner was stopped and Nickel's opportunity to observe him.
Letner's Second Assignment of Error is overruled.
 IV
Letner's Third Assignment of Error states:
 THE TRIAL COURT ERRED WHEN IT FAILED TO SUSTAIN THE SUPPRESSION MOTION, BECAUSE THE OFFICER LACKED REASONABLE SUSPICION TO MAKE THE TRAFFIC STOP.
Letner argues that Officer Price lacked reasonable suspicion to stop his van because the state "failed to prove that there was even an offense or a suspicion of an offense that could be the basis of a legitimate stop[,]" and "failed to sufficiently link his van to the van that was reported in the person's driveway." We disagree.
"[A] police officer may conduct a traffic stop of an individual driving a motor vehicle when the officer has a reasonable suspicion, based on specific and articulable facts, that a criminal violation has occurred." Westlake v. Kaplysh (1997), 118 Ohio App.3d 18, 20. The officer need not prove that the suspect committed an offense beyond a reasonable doubt or even that there is probable cause to believe that the suspect committed an offense. Id. The officer's actions must be judged against an objective standard, to wit: whether the facts available to the officer at the moment of the search and seizure would warrant a reasonable, cautious person to believe that the action taken was appropriate. See State v. Bobo (1988), 37 Ohio St.3d 177, 178-179, quoting Terry v. Ohio (1968),392 U.S. 1, 19-20. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances[,]" Bobo, supra, paragraph one of the syllabus, and the totality of the surrounding circumstances, "are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86,87-88.
Here, the testimony presented at the suppression hearing revealed that on the night in question, Karen Fecher received a call from her sister-in-law, Deanna Fecher, who lived across the street from her at 3030 Viola Dr. Deanna told Karen that she believed that she had been followed home from a movie theater by a man driving a full-sized white van with red lettering, who had just pulled into her driveway. Fecher called 911 and relayed the information to a dispatcher at the Beavercreek Police Department, who, in turn, relayed it to Officer Sandy Price. The van was still in the drive-way at the time the 911 call was made, but it subsequently left. Within minutes, Officer Price saw a full-sized white van with red lettering turn from Newton Drive, onto Fairfield Road. When Price first spotted the van, it was less than one mile away from the address where the 911 call had originated, and Price knew that Newton Drive was the only exit from the neighborhood of the caller's address.
These circumstances gave Officer Price reasonable cause to suspect that criminal activity in the form of, at least, a possible Trespass may have been underway. The facts that Price spotted the van matching the description given in the 911 call within several minutes after the call was made and within one mile of the address from where the call originated were sufficient to link Letner's van to the one which had pulled into the woman's driveway. Once Price saw Letner stumble after getting out of the van, and use the van for support, she had reasonable suspicion to believe that he may have been driving under the influence, and was entitled to make a brief stop to investigate that possible criminal activity as well.
Letner's Third Assignment of Error is overruled.
 V
Letner's Fourth Assignment of Error states:
 THE CONVICTION SHOULD BE REVERSED BECAUSE THE TRIAL COURT FIRST SUSTAINED THE SUPPRESSION MOTION BUT THEN ATTEMPTED TO RESCIND IT, AND THE TRIAL COURT WAS WITHOUT AUTHORITY TO MAKE THAT RECISSION.
Letner argues that, pursuant to Civ.R. 53(C)(3)(a), the magistrate's initial ruling from the bench granting his motion to suppress was an order "necessary to regulate the proceedings" which the magistrate could enter without "judicial approval[.]" Therefore, Letner asserts, it was a final appealable order, and the magistrate lacked authority to rescind it. We disagree.
First, Civ.R. 53 does not apply to this criminal action. Crim.R. 57 permits a trial court to "look to the rules of civil procedure and to the applicable law if no rule of criminal procedure exists." (Emphasis added.) Crim.R. 19 governs the actions of magistrates in criminal matters. The instant case is governed by the former version of Crim.R. 19, because the suppression hearing was held in this matter prior to July 1, 2000, the date on which the current version of Crim.R. 19 became effective.
The former version of Crim.R. 19(B)(3) provided that "[a]ny orders issued by a magistrate shall be made in writing and included in the record." A party then had seven days after the issuance of the order to file objections to it. Crim.R. 19(C). Upon consideration of the objections, the trial judge could hear additional evidence, and affirm, reject, or modify the magistrate's order. Id.
Here, the magistrate, after initially granting Letner's motion to suppress from the bench, never reduced that ruling to a written order. Consequently, the prosecutor's time to file objections to the magistrate's decision was never triggered. At least until the time she entered her written decision into the record, the magistrate was free to reconsider her ruling and amend it if necessary, as she, in fact, chose to do.
Accordingly, Letner's Fourth Assignment of Error is overruled.
 VI
All of Letner's assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and YOUNG, J., concur.