[Cite as *State v. Fickert*, 2018-Ohio-4349.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2018-CA-15 |
| | : | |
| v. | : | Trial Court Case No. 2017-TRC-8720 |
| | : | |
| SONYA M. FICKERT | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of October, 2018.

. . . . . . . . . . .

MARC T. ROSS, Atty. Reg. No. 0070446, City of Springfield Prosecutor's Office, 50 East Columbia Street, Fourth Floor, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellant

PATRICK J. CONBOY, Atty. Reg. No. 0070073, 5613 Brandt Pike, Huber Heights, Ohio 45424
    Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** Pursuant to R.C. 2945.67(A) and Crim.R. 12(K), plaintiff-appellant, the State of Ohio, appeals from the judgment of the Clark County Municipal Court granting a motion to suppress filed by defendant-appellee, Sonya Fickert. For the following reasons, the judgment of the trial court will be reversed and the matter will be remanded for further proceedings.

## Facts and Course of Proceedings

**{¶ 2}** At approximately 1:00 a.m. on July 1, 2017, Sergeant Jason Cadle of the Ohio State Highway Patrol initiated a traffic stop of a vehicle driven by Fickert after Fickert flashed her "brights" at him shortly before passing him in the opposite direction. During the stop, Cadle conducted field sobriety tests, which led to a charge of operating a vehicle under the influence of drugs or alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a). Fickert also was charged with violating R.C. 4510.16(B) (driving under suspension for nonpayment of a judgment) and R.C. 4513.15(A)(1) (failure to dim headlights). Fickert pled not guilty to the charges.

**{¶ 3}** On November 2, 2017, Fickert filed a motion to suppress. In the motion, Fickert argued that the stop of her vehicle was unlawful, that Sergeant Cadle failed to conduct field sobriety tests in substantial compliance with the proper procedures, that her arrest for OVI was unlawful, and that her statements to Cadle were not knowingly, intelligently, and voluntarily made. On December 8, 2017, the trial court held a hearing on Fickert's motion to suppress that was limited to Sergeant Cadle's justification for the traffic stop of Fickert's vehicle.

**{¶ 4}** Sergeant Cadle and Fickert both testified at the suppression hearing. Cadle testified that shortly after 1:00 a.m. on July 1, 2017, he was driving eastbound in a marked cruiser on Lower Valley Pike when he observed a pick-up truck traveling westbound toward him on the same road. Cadle described Lower Valley Pike as a dark county road with no street lights. Cadle testified that the road conditions required the use of headlights, but that he was not using his high beams at the time he observed the pick-up truck. He testified that, as the pick-up truck approached, the driver (later identified as Fickert) flashed "a large LED light bar that was mounted on top of [her] truck" as she passed him on the roadway. Trans. (Dec. 8, 2017) p. 6. According to Cadle, the LED light remained on for "just a few seconds tops." *Id.* at 10.

**{¶ 5}** Continuing, Sergeant Cadle testified that because it was an LED light, the light Fickert flashed was different and brighter than when he normally gets "brighted." *Id.* at 9. Cadle testified that the LED light projected into his eyes and blinded him. Specifically, Cadle testified that "the light was so blinding * * * I had to go look off to the right a little bit and focus on the edge line to maintain the roadway." *Id.* at 6. According to Cadle, he "still had the white spots in [his] eyes" after Fickert flashed the light. *Id.* at 7. Cadle further testified that he pulled Fickert over due to her blinding him with the LED light. *Id.*

**{¶ 6}** In response, Fickert testified that the night in question was very dark and that the pavement was wet from rain earlier in the day. Fickert stated that as she drove her pick-up truck westbound on Lower Valley Pike, a road without streetlights, she saw an oncoming vehicle with its high beams activated. Fickert testified that the oncoming vehicle's high beams "blinded [her], so [she] had to watch the lines." *Id.* at 14. Upon

being blinded by the oncoming vehicle, Fickert testified that she flashed the "LED bar" on the top of her truck at the vehicle one time for "just a second" because the high beams on her truck were not working. *Id.* Fickert claimed she did not notice the other vehicle was a police cruiser until she flashed the LED bar.

{¶ 7} In addition to this testimony, the parties jointly offered Sergeant Cadle's cruiser camera video of the traffic stop into evidence. *See* Joint Exhibit No. 1. The video corroborated both Fickert's and Cadle's description of the roadway. The video also reflected that Fickert flashed her LED light once and then returned to driving without the LED light illuminated.

{¶ 8} Following the suppression hearing, the parties submitted post-hearing memoranda, both of which discussed the Fourth District Court of Appeals' decision in *State v. Woods*, 86 Ohio App.3d 423, 621 N.E.2d 523 (4th Dist.1993) and the Eighth District Court of Appeals' decision in *Westlake v. Kaplysh*, 118 Ohio App.3d 18, 691 N.E.2d 1074 (8th Dist.1997). After taking the matter under advisement, on January 22, 2018, the trial court granted Fickert's motion to suppress. The trial court's decision granting the motion stated the following in its entirety:

> This matter is before the Court on Defendant's motion to suppress. The issue is narrowed to whether or not the trooper had a reasonable and articulable suspicion of a traffic offense, in this case, Failure to Dim Headlights, O.R.C. 4513.15(A)(1).
>
> Both sides presented compelling arguments interpreting current case law State versus Woods and City of Westlake versus Kaplysh. As is often the case, this matter hinges on the facts of that particular evening.

The Court, having heard the testimony of both drivers and viewed the disc submitted showing the dash-cam of the cruiser, has come to a clear conclusion. The flick of the headlights by Defendant lasted perhaps a second and as such did not appear to create the type of visual impairment that is the concern of O.R.C. 4513.15. Therefore, the trooper was without sufficient grounds in this case to make a stop based solely on the violation of Failure to Dim Lights.

Defendant's motion to suppress is granted.

(Emphasis sic.) Decision and Entry (Jan. 22, 2018), Clark County Municipal Court Case No. 2017-TRC-8720, Docket No. 33, p. 1.

{¶ 9} The State now appeals from the trial court's decision granting Fickert's motion to suppress, raising a single assignment of error for review.

**Assignment of Error**

{¶ 10} The State's assignment of error is as follows:

THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BASED ON AN ERRONEOUS FINDING THAT THERE WAS NOT A REASONABLE AND ARTICULABLE SUSPICION THAT DEFENDANT COMMITTED A VIOLATION OF R.C. 4513.15.

{¶ 11} Under its sole assignment of error, the State contends the trial court erred in finding that Sergeant Cadle lacked a reasonable, articulable suspicion to conduct a traffic stop based on a violation of R.C. 4513.15 when Fickert flashed her LED light at Cadle and, according to Cadle, blinded him on the roadway. We agree with the State.

*Standard of Review*

**{¶ 12}** In deciding a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Pence*, 2d Dist. Clark No. 2013 CA 109, 2014-Ohio-5072, ¶ 7, citing *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996). "The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record." *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). "Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied." *Id.*

*Reasonable Articulable Suspicion*

**{¶ 13}** The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Stopping an automobile constitutes a 'seizure' " under the Fourth Amendment. *State v. Rastbichler*, 2d Dist. Montgomery No. 25753, 2014-Ohio-628, ¶ 16, citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "[A] police officer may lawfully stop a vehicle if the officer has a reasonable articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation." (Citation omitted.) *State v. Hardy*, 2d Dist. Montgomery No. 24114, 2011-Ohio-241, ¶ 20, citing *State v. Mays*, 119 Ohio St.3d 406,

2008-Ohio-4539, 894 N.E.2d 1204, ¶ 8.

{¶ 14} In determining whether there was a reasonable, articulable suspicion to stop and detain a motorist, the court must evaluate the "totality of the circumstances." (Citations omitted.) *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14. "These circumstances must be considered 'through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *State v. White*, 2d Dist. Montgomery No. 18731, 2002 WL 63294, *2 (Jan. 18, 2002), quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 15} In this case, Sergeant Cadle testified that he conducted the traffic stop in question due to Fickert blinding him with the LED light mounted on top of her pick-up truck. R.C. 4513.15(A)(1) requires that "[w]henever the driver of a vehicle approaches an oncoming vehicle, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver." A violation of R.C. 4513.15(A)(1) is a minor misdemeanor. R.C. 4513.15(B).

{¶ 16} The purpose of R.C. 4513.15(A)(1) "is to promote safety by preventing any unnecessary visual impairment resulting from the glare of high beams—an impairment that could affect a driver whether he be moving at a high speed on a country road or about to stop or start up at an intersection, where pedestrians are likely to cross." *Kaplysh*, 118 Ohio App.3d at 21, 691 N.E.2d 1074. The typical case related to violations of R.C. 4513.15(A)(1) involves a driver traveling with high beams activated who fails to dim the high beams for oncoming traffic. *See, e.g., State v. Gist*, 2d Dist. Montgomery No. 22823, 2009-Ohio-4791; *State v. Raleigh*, 5th Dist. Licking No. 2007-CA-31, 2007-Ohio-5515, ¶ 24; *State v. McCleese*, 12th Dist. Brown No. CA2000-12-038, 2001 WL 792789

(July 16, 2001); *State v. Burghardt*, 6th Dist. Erie No. E-98-060, 1999 WL 502139 (July 16, 1999).

{¶ 17} In *State v. Hinton*, 2d Dist. Clark No. 2833, 1992 WL 52764 (Mar. 16, 1992), this court addressed a situation similar to the case at bar. In *Hinton*, a state trooper initiated a traffic stop of the defendant's vehicle due to the defendant failing to dim his headlights as required by R.C. 4513.15 and thereafter charged the defendant with OVI. *Id.* at *1. After being charged, the defendant moved to suppress the evidence obtained as a result of the traffic stop. *Id.* At the hearing on the motion to suppress, the state trooper testified that he observed a vehicle driven by the defendant with its bright headlights activated. *Id.* The trooper further testified that when he observed another vehicle pass the defendant in the opposite direction, the defendant did not dim his headlights. *Id.* Following the hearing, the trial court granted the defendant's motion to suppress on grounds that "[t]he State failed to produce evidence at [the] hearing that the arresting officer had a reasonable and articulable suspicion that the vehicle of defendant or the defendant himself was in violation of law at the time of arrest." *Hinton* at *2.

{¶ 18} On appeal, we reversed the decision of the trial court on grounds that "the State had presented evidence, in the form of [the trooper's] testimony, that, if believed, would have established the existence of a reasonable and articulable suspicion that [the defendant] was in violation of R.C. 4513.15 by having failed to dim his lights to on-coming traffic." *Id.* In so holding, we stated that, although the trial court was free to disbelieve the trooper's testimony, "there was nothing in the trial court's decision to suggest that it disbelieved [the trooper]." *Id.* As a result, we remanded the matter to the trial court to determine whether to credit the trooper's testimony and noted that if the trial court should

decide to credit the trooper's testimony in full, then the defendant's motion to suppress should be overruled.    *Id.* at *3.

**{¶ 19}** Like *Hinton*, in this case, there was nothing in the trial court's decision to suggest that the court disbelieved Sergeant Cadle's testimony.   Instead, after watching the video evidence, the trial court found that "[t]he flick of the headlights by [Fickert] lasted perhaps a second and as such did not appear to create the type of visual impairment that is the concern of O.R.C. 4513.15."   Decision and Entry (Jan. 22, 2018), Clark County Municipal Court Case No. 2017-TRC-8720, Docket No. 33.   In other words, the trial court did not discredit Sergeant Cadle's testimony that his vision had been impaired by Fickert's conduct.   Rather, the trial court simply held that Cadle's vision was not impaired to the extent that it constituted a violation of R.C. 4513.15(A)(1).   Based on this finding, the trial court concluded that Cadle did not have sufficient grounds to conduct the traffic stop in question and granted the motion to suppress.   This was an error.

**{¶ 20}** In order to have lawfully stopped Fickert, Sergeant Cadle was only required to have a reasonable, articulable suspicion that Fickert's conduct amounted to a traffic violation, specifically a violation of R.C. 4513.15(A)(1).   Even if the trial court correctly concluded that a momentary flash of light was not the type of conduct prohibited by R.C. 4513.15(A)(1), "[a] police officer's objectively reasonable belief that a traffic violation has occurred, including reasonable mistakes of law, can constitute reasonable suspicion to justify a traffic stop."   *State v. Kirkpatrick*, 2017-Ohio-7629, 97 N.E.3d 871, ¶ 6, (1st Dist.), citing *Heien v. North Carolina*, ___ U.S. ___, 135 S.Ct. 530, 540, 190 L.Ed.2d 475 (2014). *Accord State v. Dowty*, 2d Dist. Montgomery No. 26982, 2016-Ohio-4719, ¶ 17; *State v. Johnson*, 2d Dist. Montgomery No. 27452, 2017-Ohio-7515, ¶ 5, fn. 2; *State v. Deacey*,

2d Dist. Montgomery No. 27408, 2017-Ohio-8102, ¶ 51, 59.

{¶ 21} For example, in *Heien*, the United States Supreme Court analyzed a case where a police officer stopped a vehicle because one of the vehicle's two brake lights was not working. The officer believed that the law in North Carolina required both brake lights to be operable. This belief turned out to be a mistake of law by the officer, as a single working brake light was all that the law required. After reviewing the language of the relevant statute, the United States Supreme Court determined that the officer's mistake about the brake-light law was objectively reasonable. *Heien* at 540. As a result, the court found the officer had reasonable suspicion to justify the traffic stop. *Id.*

{¶ 22} Based on *Heien*, even if Fickert's conduct of momentarily flashing her LED light was not sufficient to constitute a violation of R.C. 4513.15(A)(1), the traffic stop at issue was still lawful if Sergeant Cadle mistakenly, albeit reasonably, believed that a violation of the statute had occurred. When reviewing the language of R.C. 4513.15(A)(1) and considering Cadle's testimony that his cruiser did not have its high-beam lights illuminated, an objectively reasonable officer could have concluded that a violation of R.C. 4513.15(A)(1) occurred under circumstances of this case; i.e., where a driver flashed an LED light that was aimed in such a manner so that the glaring rays project into an oncoming driver's eyes and temporarily blinded the oncoming driver.

{¶ 23} While there is case law holding that a "momentary flick onto high beam followed immediately by a return to low beam cannot be elevated into a violation of R.C. 4513.15," *Woods*, 86 Ohio App.3d at 426, 621 N.E.2d 523, for purposes of this case, it is not necessary to determine whether such an interpretation of R.C. 4513.15 is correct. Rather, the issue is confined to whether Sergeant Cadle reasonably believed that a

violation occurred; from Cadle's testimony, such a reasonable belief was established.

**{¶ 24}** The State's assignment of error is sustained.

## Conclusion

**{¶ 25}** Having sustained the State's sole assignment of error, the judgment of the trial court will be reversed and remanded for the trial court to determine whether to credit Sergeant Cadle's testimony. In the event that the trial court decides to credit Cadle's testimony in full, Fickert's motion to suppress should be overruled.

. . . . . . . . . . . . .

TUCKER, J., concurs.

FROELICH, J., dissenting:

**{¶ 26}** In contrast to most cases concerning R.C. 4513.15(A)(1), which involve a driver traveling with high beams illuminated who fails to dim the high beams for oncoming traffic, the trial court here found that that Fickert flashed her "headlights" for no more than a second when she approached Officer Cadle's oncoming vehicle. The court implicitly found that, except for that very brief period, Fickert had not been driving with her high beams or other bright lights illuminated; the cruiser video supported this conclusion. Moreover, the court found that Fickert's actions "did not appear to create the type of visual impairment that is the concern of O.R.C. 4513.15." Based on these factual findings, the trial court concluded that that Fickert's actions did not create a reasonable suspicion that Fickert violated R.C. 4513.15(A)(1).

**{¶ 27}** I would find *State v. Hinton*, 2d Dist. Clark No. 2833, 1992 WL 52764 to be distinguishable. First, unlike in *Hinton*, the trial court had testimony from witnesses

(Cadle and Fickert), as well as the cruiser video, to inform its factual findings. Second, *Hinton* involved a vehicle that was traveling with its high beams illuminated, and the driver failed to dim the high beams for an oncoming vehicle; here, Fickert was traveling with her low beams on, and she "flashed" her bright lights for "perhaps a second."

{¶ 28} Finally, the crux of *Hinton* was that it appeared "that the trial court was under the erroneous impression that there was no evidence in the record from which it could find that the stop of Hinton was supported by a reasonable and articulable suspicion." *Hinton* at *1. We held that, in the absence of some indication that the court did not believe the trooper, the trial court's finding in *Hinton* that the State had failed to present evidence of a traffic violation was inconsistent with the undisputed evidence at the suppression hearing, which indicated that Hinton had failed to dim his headlights to an oncoming vehicle. In contrast, the trial court in this case indicated that it had considered the testimony of both witnesses and the cruiser video, found that "the flick of the headlights by Defendant lasted perhaps a second," and that Fickert's actions "did not appear to create the type of visual impairment that is the concern of O.R.C. 4513.15." I would conclude that the trial court in this case made specific findings, and we have no need to remand for a determination of credibility.

{¶ 29} We have noted that "[f]lashing one's high beams is a common form of signal from one driver to another." *State v. Carlile*, 2d Dist. Montgomery No. 17270, 1999 WL 301422, *4 (May 14, 1999). Fickert testified that she flashed her bright lights once for "just a second" because she believed Cadle's vehicle was traveling with its high beams illuminated. The trial court expressly found that Cadle activated her high beams for "perhaps a second" and that her actions did not cause the visual impairment to Sergeant

Cadle that R.C. 4513.15(A)(1) requires.    Given the trial court's factual findings, which are supported by the record, I would conclude that the trial court did not err in granting Fickert's motion to suppress.


Copies sent to:

Marc T. Ross
Patrick J. Conboy
Hon. Eugene S. Nevius