[Cite as *State v. Williams*, 2020-Ohio-6755.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case Nos. 2019AP100042 |
| | : | 2019AP100043 |
| THOMAS J. WILLIAMS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the New Philadelphia
Municipal Court, Case Nos. TRC
1903355 A,B,C and CRB 1900658

JUDGMENT:                    REVERSED AND REMANDED

DATE OF JUDGMENT ENTRY:      December 17, 2020

APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

LACEE FELIX                            MATTHEW W. ONEST
DOVER CITY PROSECUTOR                  KRUGLIAK, WILKINS, et al.
339 Oxford St.                         4775 Munson St. N.W.
Dover, OH 44622                        P.O. Box 36963
                                       Canton, OH 44735-6963

*Delaney, J.*

{¶1}   Appellant Thomas J. Williams appeals from the October 18, 2019 Judgment Entry of the New Philadelphia Municipal Court incorporating the trial court's August 22, 2019 Judgment Entry overruling his motion to suppress.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   The following evidence is adduced from the record of the suppression hearing on August 13, 2019. The hearing was brief and limited to the issue of whether the officer had reasonable suspicion to traffic-stop appellant.

{¶3}   This case arose on May 27, 2019, around 9:40 p.m., as a Dover police officer monitored traffic from a stationary location in a parking lot.  Appellant drove by on South Wooster Avenue.  Several people were in appellant's car and the officer believed one of them "gave him the finger."  The officer pulled out and followed appellant, who approached the traffic light at the intersection of South Wooster Avenue and Union Avenue.

{¶4}   Before this intersection, South Wooster Avenue consists of two lanes of southbound travel divided by a dotted white line.  Approaching the intersection, the center line becomes a solid white line.  The intersection is a "Y," with South Wooster Avenue continuing at a 45-degree angle to the left and Union Avenue intersecting at a slight right angle.  The left lane is a left-turn-only lane controlled by a large white left arrow painted on the pavement and a traffic light.  The traffic light for the left-turn lane is a left-turn arrow.

{¶5}   Appellant approached this intersection in the left lane and entered the area of the left-turn-only portion as designated by the solid white line.  When the traffic light

turned green, however, appellant waited, signaled a right turn, pulled into the right-hand lane, and continued southbound.

{¶6} The officer performed a traffic stop on the basis of an improper lane change. Appellant was ultimately cited with two counts of O.V.I., one count of "improper lane change" pursuant to Dover City Ordinance 331.08, and one count of child endangering.

{¶7} Appellant entered pleas of not guilty and filed a motion to suppress, arguing the officer had no justification for the traffic stop based upon the marked-lanes violation. The matter proceeded to an evidentiary hearing and the trial court overruled the motion to suppress by judgment entry dated August 22, 2019.

{¶8} Appellant appeared before the trial court on October 18, 2019 and changed his pleas of not guilty to ones of no contest. Appellant was convicted upon one count of O.V.I. (third offense in 10 years), marked lanes, and child endangering. Appellee dismissed the remaining count of O.V.I. and the trial court sentenced appellant to, e.g., a jail term of 90 days.

{¶9} Appellant now appeals from the October 18, 2019 Judgment Entry of the New Philadelphia Municipal Court, incorporating the trial court's judgment entry of August 22, 2019, overruling his motion to suppress.

{¶10} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶11} "THE TRIAL COURT ERRED BY FAILING TO SUPPRESS EVIDENCE BECAUSE THE TRAFFIC STOP WAS BASED ON A MISTAKE OF LAW."

**ANALYSIS**

{¶12} Appellant argues the trial court should have granted his motion to suppress. We agree.

{¶13} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶14} Appellant's argument is a combination of the latter two claims. He argues the officer lacked reasonable and articulable suspicion for the traffic stop. The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507 19 L.Ed.2d 576 (1967). An investigative stop, or *Terry* stop, is a common exception to the Fourth Amendment warrant requirement. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 889 (1968). Because

the "balance between the public interest and the individual's right to personal security" tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In *Terry,* the Supreme Court held that a police officer may stop an individual if the officer has a reasonable suspicion based upon specific and articulable facts that criminal behavior has occurred or is imminent. See, *State v. Chatton,* 11 Ohio St.3d 59, 61, 463 N.E.2d 1237 (1984).

{¶15} The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews,* 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991); *State v. Bobo,* 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988). The Supreme Court of the United States has re-emphasized the importance of reviewing the totality of the circumstances in making a reasonable-suspicion determination:

> When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about

the cumulative information available to them that "might well elude an untrained person." Although an officer's reliance on a mere "hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.

*United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), citing *United States v. Cortez,* 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶16} Traffic stops based upon observation of a traffic violation are constitutionally permissible. *Dayton v. Erickson,* 76 Ohio St.3d 3, 11–12, 1996–Ohio– 431, 665 N.E.2d 1091. This Court has held that any traffic violation, even a *de minimis* violation, may form a sufficient basis upon which to stop a vehicle. *State v. Bangoura,* 5th Dist. No. 08 CA 95, 2009–Ohio–3339, ¶ 14, citing *State v. McCormick,* 5th Dist. No.2000CA00204, 2001 WL 111891 (Feb. 2, 2001); *State v. Woods*, 5th Dist. Licking No. 12-CA-19, 2013-Ohio-1136, ¶ 60.

{¶17} In the instant case, the trial court found the Dover police officer had reasonable suspicion to stop appellant for a violation of Dover Codified Ordinance 331.08, "Driving in Marked Lanes or Continuous Lines of Traffic." Appellant argues this decision was in error because the officer did not have reasonable suspicion to stop and detain him; his conduct in crossing the single, solid white line from the left-turn-only lane into the straight lane of travel was not illegal.

{¶18} We begin with the ordinance, which is similar to former R.C. 4511.33. Dover Codified Ordinance 331.08 states:

(a) Whenever any roadway has been divided into two or more clearly marked lanes for traffic or wherever traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:

(1) A vehicle shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

(2) Upon a roadway which is divided into three lanes and provides for two-way movement of traffic, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle where the roadway is clearly visible and such center lane is clear of traffic within a safe distance, or when preparing for a left turn, or where such center lane is at the time allocated exclusively to traffic moving in the direction the vehicle is proceeding and is posted with signs to give notice of such allocation.

(3) Official signs may be erected directing specified traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction regardless of the center of the roadway, or restricting the use of a particular lane to only buses

during certain hours or during all hours, and drivers of vehicles shall obey the directions of such signs.

(4)  Official traffic control devices may be installed prohibiting the changing of lanes on sections of roadway and drivers of vehicles shall obey the directions of every such device.

(b)  Except as otherwise provided in this subsection, whoever violates this section is guilty of a minor misdemeanor.  If, within one year of the offense, the offender previously has been convicted of or pleaded guilty to one predicate motor vehicle or traffic offense, whoever violates this section is guilty of a misdemeanor of the fourth degree.  If, within one year of the offense, the offender previously has been convicted of two or more predicate motor vehicle or traffic offenses, whoever violates this section is guilty of a misdemeanor of the third degree.

If the offender commits the offense while distracted and the distracting activity is a contributing factor to the commission of the offense, the offender is subject to the additional fine established under Section 303.991 of the Traffic Code.

{¶19} At the suppression hearing, the police officer conceded he did not include a subsection on appellant's citation.  The officer opined, though, that appellant could have been stopped pursuant to subsection (a)(1) or (a)(4).  T. 19-20.  A violation of (a)(1) would require a showing that appellant failed to change lanes without first ascertaining he could safely do so.  The officer testified he did not observe any traffic in the right lane of travel;

appellant signaled his turn from the left-turn-only lane into the right lane of travel; and did so safely.  T. 10-11.  In fact, the officer also moved from the left-turn-only-lane into the right lane of travel as he followed appellant, and did so safely.

{¶20} We are left with a potential violation of 331.08(a)(4).  The issue remains whether the officer had a reasonable and articulable suspicion that appellant failed to obey the direction of an official traffic device.  "Traffic control device" means a "flagger, sign, signal, marking, or other device used to regulate, warn, or guide traffic, placed on, over, or adjacent to a street, [or] highway * * * *." R.C. 4511.01(QQ).  In this case, the traffic control device at issue is the solid white line appellant crossed when changing lanes.  Appellee asserts appellant was essentially locked into a left turn once he was in the left-turn lane.  In the officer's estimation, "when there's a solid white line it's put there for a reason.  Once you enter that left-turn lane you're obligated to make the left-hand turn, not proceed back into the right lane and head southbound."  T. 8.

{¶21} Appellant argues the officer therefore erred in stating a driver must remain inside the lane bounded by a solid white line.  Appellant points to the pertinent section of the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD") stating, "Where crossing the lane line markings is *discouraged*, the lane line markings shall consist of a normal or wide solid white line."  (Emphasis added). OMUTCD Sec. 3B.04.[1]

{¶22} We have previously noted that when an officer is confronted with a situation requiring the application of an unclear statute, the officer can still make a valid stop if the

---

[1]      The goal of traffic laws and regulations is to promote highway safety.  *Maple Heights v. Smith*, 131 Ohio App.3d 406, 408, 722 N.E.2d 607 (8th Dist.1999). R.C. 4511.09 provides that "[t]he department of transportation shall adopt a manual and specifications for a uniform system of traffic control devices," and the resulting manual is the OMUTCD. *Maple Heights* at 408.

officer's mistaken interpretation of the law is reasonable. *State v. Hill,* 5th Dist. Stark No. 2015 CA 00078, 2016-Ohio-1510, ¶ 18, citing *State v. Millerton,* 2nd Dist. Montgomery No. 26209, 2015–Ohio–34, 26 N.E.3d 317, ¶ 16, and *Heien v. North Carolina,* 574 U.S. 54, 135 S.Ct. 530, 533, 190 L.Ed.2d 475 (2014). The United States Supreme Court in *Heien* considered whether a police officer's erroneous interpretation of a motor vehicle statute was objectively reasonable. *Id.* The Court cautioned, "The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable." *Id.* at 539. The Court added, "We do not examine the subjective understanding of the particular officer involved." *Id.*

{¶23} In the instant case, the traffic device at issue is the solid white line demarcating the left-turn only line. The officer determined appellant failed to obey the direction of the device by stopping in the lane, signaling a turn, and entering the right lane. Appellant was obligated, according to the officer, to make the left turn and would have had to circle the block to comply with the law. We do not find the officer's mistake of law to be objectively reasonable. If a driver is inside a left-turn-only lane and does not intend to make a left turn, and can safely complete a lane change and in fact signals the lane change, we are unable to discern a violation of Dover City Ordinance 331.08(a)(1) or 331.08(a)(4). Appellant was not required to make a left turn when he could safely travel into the right lane, and the officer's belief he was statutorily-obligated to do so was based upon his subjective understanding of 331.08. *State v. Trout*, 5th Dist. No. 18-CA-00043, 2019-Ohio-124, 128 N.E.3d 900, ¶ 21.

{¶24} We are cognizant that whether the evidence would be sufficient to support a finding of guilt upon the improper lane change offense is beyond the scope of our

review. The sole issue to be resolved at the suppression hearing was whether the officer had reasonable suspicion to initiate the traffic stop, and it is well-established that an officer's reasonable articulable suspicion does not require proof beyond a reasonable doubt that the defendant's conduct has satisfied the elements of the offense. *State v. Willis,* 5th Dist. Licking No. 14 CA 103, 2015–Ohio–3739, ¶ 25, citing *Westlake v. Kaplysh,* 118 Ohio App.3d 18, 20, 691 N.E.2d 1074 (8th Dist.1997). Nevertheless, we are tasked with evaluating whether the totality of the circumstances indicates the officer had a particularized and objective basis for suspecting legal wrongdoing. *Arvizu*, supra. We find the officer's mistaken interpretation of the ordinance—an absolute prohibition against crossing a solid white line--was unreasonable. See, *Trout*, supra, 2019-Ohio-124 at ¶ 17, citing *Heien*, supra.

{¶25} Appellant's sole assignment of error is sustained.

## CONCLUSION

{¶26} Appellant's sole assignment of error is sustained and the judgment of the New Philadelphia Municipal Court is reversed.  Appellant's convictions are vacated and the matter is remanded to the trial court for further proceedings in accordance with our opinion and the law.  See, *Trout*, supra, 2019-Ohio-124 at ¶ 26.

By:  Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.