OPINION
{¶ 1} Defendant-appellant Hershel A. Mullins appeals his convictions and sentences in the Licking County Municipal Court on one count of Driving Under the Influence in violation of R.C.4511.19 (A) 1 and one count of Failure to Dim Headlights in violation of Ohio Revised Code Section 4513.15(A). The appellee is the State of Ohio. The following facts give rise to this appeal.
 {¶ 2} On October 18, 2005, Trooper Shawn Eitel observed a vehicle traveling in the opposite direction with its high beams on. (T. at 4). The vehicle continued toward the Trooper and passed without dimming the headlights. Trooper Eitel noted that the lights were extremely bright and glared in his eyes. Trooper Eitel initiated a traffic stop and approached the vehicle.
 {¶ 3} Upon approaching the vehicle, Trooper Eitel noticed an open container of what appeared to be an alcoholic beverage, a strong odor of an alcoholic beverage, and slow and deliberate movements on the part of the appellant. (T. at 5). He also noticed that the appellant had bloodshot, glassy eyes and slurred speech. (Id.).
 {¶ 4} As part of his normal procedure, Trooper Eitel asked the appellant to exit the vehicle and have a seat in the front seat of his cruiser to complete the paperwork and citation. (Id. at 6-7). During this time, the Trooper asked the appellant general investigative questions. During that conversation the appellant admitted to consuming alcohol. (Id.). At this time he was asked to submit to field sobriety tests. (Id. at 8-9). After the completion of those tests, the appellant was placed under arrest for operating a vehicle under the influence of alcohol. Appellant's BAC test result was a 0.255.
 {¶ 5} Appellant filed a motion to suppress both the traffic stop and his statements to the Trooper. After an evidentiary hearing, the trial court denied appellant's motions by Judgment Entry filed January 27, 2006. On February 16, 2006 appellant pled no contest to both charges. The trial court found appellant guilty. The trial court sentenced appellant to a fine of $10.00 and court costs for the failure to dim headlights charge. On the OVI charge, the trial court ordered appellant to pay a fine of $300.00 plus court costs and further ordered appellant to serve 30 days in jail. The trial court suspended all but three days on the condition of appellant's probation for one year. Appellant was further ordered to complete the driver's intervention program, and received a one year driver license suspension.
 {¶ 6} Appellant filed a notice of appeal and this matter is now before this court for consideration of the following two assignments of error:
 {¶ 7} "I. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO SUPPRESS DUE TO AN UNLAWFUL STOP.
 {¶ 8} "II. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY FAILING TO SUPRESS STATEMENTS ATTRIBUTED TO APPELLANT."
 I. II. {¶ 9} In his first assignment of error appellant maintains that the trial court erred in overruling his motion to suppress because the trooper did not have probable cause to effectuate a traffic stop. In his second assignment of error, appellant maintains that the trial court erred by overruling his motion to suppress his statements to the trooper. We disagree.
 {¶ 10} There are three methods of challenging on appeal the trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St. 3d 19,437 N.E. 2d 583; State v. Klein (1981), 73 Ohio App. 3d 486,597 N.E. 2d 1141; State v. Guysinger (1993), 86 Ohio App. 3d 592,621 N.E. 2d 726.
 {¶ 11} Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App. 3d 37, 619 N.E. 2d 1141, overruled on other grounds.
 {¶ 12} Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Curry (1994), 95 Ohio App. 3d 93, 641 N.E. 2d 1172; State v.Claytor (1993), 85 Ohio App. 3d 623, 620 N.E. 2d 906.
 {¶ 13} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility.Guysinger, supra, at 594 (citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778.
 {¶ 14} In his first assignment of error appellant argues that the traffic stop leading to his arrest was not based upon reasonable suspicion that he had committed a traffic violation. Appellant does not contest his arrest for driving under the influence; rather he contends that the initial stop was unlawful.
 {¶ 15} "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact". Ornelas v. United States
(1996), 517 U.S. 690, 695-96, 116 S.Ct. 1657, 1661-62. In general, we review determinations of historical facts only for clear error. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 698, 116 S.Ct. at 1663. On the other hand, determinations of reasonable suspicion and probable cause are reviewed de novo. Id.
 {¶ 16} The first issue is whether the factual findings, as determined by the lower court at the evidentiary hearing on the motion to suppress evidence, were clearly erroneous. "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."United States v. United States Gypsum Co. (1947), 333 U.S. 364,395. Moreover, where the evidence would support several conclusions but the lower court has decided to weigh more heavily in one direction, "[s]uch a choice between . . . permissible views of the weight of evidence is not `clearly erroneous'."United States v. Yellow Cab Co. (1949), 338 U.S. 338, 342.
 {¶ 17} In the case at bar, appellant argues that he and his girlfriend both testified that he never utilizes his high-beam headlights when he drives at night, and further that the high-beam lights were not engaged when the truck was driven from the scene.
 {¶ 18} In ruling upon appellant's motion the trial court noted that R.C. 4513.15 requires the operator of a motor vehicle at night to make sure that the headlight beams are not directed into the eyes of oncoming drivers. (T. at 30). The court found the officer's testimony to be credible in this respect. (Id.).
 {¶ 19} We conclude that the trial court's factual findings do not constitute clear error. Due weight has been given to the inferences drawn by the trial court and the testifying law enforcement officer. After careful review of the record, there is no indication that the trial court has made a mistake. The trial court has the authority to decide in whose favor the weight of the evidence will lie. Here, the trial court decided in favor of Trooper Eitel. Such a choice is not clearly erroneous. YellowCab, 338 U.S. at 342.
 {¶ 20} Accordingly, the trial court did not err in overruling appellant's motion to suppress the traffic stop.
 {¶ 21} The next question is whether the contact of the Trooper with appellant violated the appellant's Fourth Amendment rights. Contact between police officers and the public can be characterized in three different ways. State v. Richardson,
5th Dist. No. 2004CA00205, 2005-Ohio-554 at ¶ 23-27. The first is contact initiated by a police officer for purposes of investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate theFourth Amendment. United States v. Flowers (6th Cir. 1990),909 F.2d 145, 147. The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure."Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382,115 L.Ed.2d 389 (1991); see also INS v. Delgado, 466 U.S. 210, 212,104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." Bostick, supra, at 434-435, 111 S.Ct. 2382
(citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way.Florida v. Royer (1983), 460 U.S. 491,497-98 Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id.
 {¶ 22} The second type of contact is generally referred to as "a Terry stop" and is predicated upon reasonable suspicion.Richardson, supra; Flowers, 909 F.2d at 147; See Terry v.Ohio (1968), 392 U.S. 1. This temporary detention, although a seizure, does not violate the Fourth Amendment. Under the Terry
doctrine, "certain seizures are justifiable . . . if there is articulable suspicion that a person has committed or is about to commit a crime" Florida, 460 U.S. at 498. In holding that the police officer's actions were reasonable under theFourth Amendment, Justice Rehnquist provided the following discussion of the holding in Terry: "In Terry this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. Adams v. Williams (1972),407 U.S. 143, 145-47, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612
 {¶ 23} The Fourth Amendment requires that the officer have had a "reasonable fear for his own or others' safety" before frisking. Terry v. Ohio (1968), 392 U.S. 1, 30, 88 S.Ct. 1868,20 L.Ed.2d 889. Specifically, "[t]he officer . . . must be able to articulate something more than an `inchoate and unparticularized suspicion or hunch.'" United States v. Sokolow
(1989), 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (quotingTerry, 392 U.S. at 27, 88 S.Ct. 1868). Whether that standard is met must be determined "`from the standpoint of an objectively reasonable police officer,'" without reference to "the actual motivations of the individual officers involved." United Statesv. Hill (D.C. Cir. 1997), 131 F.3d 1056, 1059 (quoting Ornelasv. United States (1996), 517 U.S. 690, 696, 116 S.Ct. 1657,134 L.Ed.2d 911).
 {¶ 24} The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." Richardson, supra; Flowers,909 F.2d at 147. A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." State v. Heston
(1972), 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376, quoting Beckv. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." Ornelas v. United States
(1996), 517 U.S. 690, 696, 116 S.Ct. 1657, 1661-1162. A police officer may draw inferences based on his own experience in deciding whether probable cause exists. See, e.g., United Statesv. Ortiz (1975), 422 U.S. 891, 897, 95 S.Ct. 2585, 2589.
 {¶ 25} When a police officer stops a motor vehicle for a traffic violation, the stop itself constitutes a `seizure' within the meaning of both the Fourth Amendment of the United States Constitution; Berkemer v. McCarty (1984), 468 U.S. 420, 436-37,104 S.Ct. 3138, 3148, 82 L.Ed.2d 317, 332-333; and Section 14, Article I, of the Ohio Constitution; see Dayton v. Erickson
(1996), 76 Ohio St.3d 3, 11, 665 N.E.2d 1091. The temporary detention involved in a traffic stop, however, is not considered "custody" triggering the Miranda protections of Fifth Amendment rights. Berkemer, 468 U.S. at 440. It is, instead, more akin to a "Terry stop," during which a police officer may briefly detain a person and conduct an investigation upon a reasonable suspicion of criminal activity. Id. at 439 (citing Terry v.Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889).
 {¶ 26} When police observe a traffic offense being committed, the initiation of a traffic stop does not violateFourth Amendment guarantees, even if the stop was pretextual or the offense so minor that no reasonable officer would issue a citation for it. Whren v. United States (1996), 517 U.S. 806,116 S.Ct. 1769, 1774-75. Nevertheless, even when the initial detention is permissible, a court must inquire whether the stop and the investigation are "reasonably related in scope to the purposes for their initiation." Berkemer, 468 U.S. at 439. A traffic stop implicates a lower level of constitutional protection because the resulting detention is "presumptively temporary and brief" and the police presence is "comparatively non-threatening" an "non-coercive." Id. at 437, 440. The logical corollary of this rule is that, when a traffic stop exceeds the duration and scope of what is "reasonably related" to the traffic investigation (or the investigation of other crimes for which police develop reasonable suspicions), it becomes a custodial detention. "If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him "in custody" for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Id. at 440. There is, however, no bright-line rule announcing when a traffic stop transforms into custody. See Id. at 441 ("[P]olice and lower courts will continue occasionally to have difficulty deciding exactly when a suspect has been taken into custody.").
 {¶ 27} In Pennsylvania v. Mimms (1977), 434 U.S. 106, 111,98 S.Ct. 330, 333, 54 L.Ed. 331, 337, the Supreme Court held that an officer who lawfully detained a vehicle for a traffic offense could order the driver out of the vehicle, even if the officer had no reasonable suspicion of danger to justify the order. The court held that the additional intrusion upon personal liberty caused by such an order was de minimis and any inconvenience to the driver was outweighed by concerns for the safety of police officers. Id. at 111. A number of Ohio courts have held that a police officer can also order a traffic misdemeanant to remain in the police cruiser for the length of his detention. See State v.Carlson (1995), 102 Ohio App.3d 585, 596, 657 N.E.2d 591; Statev. Warrell (1987), 41 Ohio App.3d 286, 287, 534 N.E.2d 1237;State v. Block (Dec. 15, 1994), Cuyahoga App. No. 67530, unreported, at 1, discretionary appeal denied (1995),72 Ohio St.3d 1521. Middletown v. Downs (March 19, 1990), Butler App. No. CA89-06-094, unreported, at 3. Courts have reasoned that the latter order, like the order permitted under Mimms, is a modest incremental intrusion justified by the nature of the traffic stop itself. See Carlson, 102 Ohio App.3d at 595-96, 657 N.E.2d 591;State v. Wineburg (March 27, 1998), 2nd Dist. No. 97 CA 58.
 {¶ 28} Contrary to appellant's assertion, there is no evidence that appellant was in custody or otherwise deprived of his freedom of action in any significant way at the time his statements to Trooper Eitel. Rather, the evidence is clear that such statement was made in response to "general on-the-scene questioning"
 {¶ 29} Trooper Eitel further testified that appellant, during such time, was not under arrest or being detained in any manner. (T. at 6-7). Trooper Eitel performed a routine check of appellant's driving record, vehicle registration and driver's license. (Id. at 7). Appellant was not handcuffed and was permitted to sit in the front seat of the cruiser. (Id. at 6-7). The Trooper noticed an odor of an alcoholic beverage in the vehicle. (Id. at 5). Further, Trooper Eitel testified that he observed what he believed to be an open container of alcoholic beverage sitting in a cup holder next to appellant. (Id.). As he exited the vehicle appellant was off balance and lost his footing. (Id. at 6-6). Once appellant was inside the cruiser Trooper Eitel noticed an odor of alcoholic beverage on appellant. (Id.). He further observed appellant's bloodshot eyes and slurred speech. (Id.). Trooper Eitel then inquired as to whether appellant had been drinking. (Id.). Appellant was not placed under arrest until he later failed the horizontal gaze nystagmus test.
 {¶ 30} Based on the foregoing, we find that the trial court did not abuse its discretion in denying appellant's motion to suppress his statements. Since appellant was not subject to a custodial interrogation, Miranda warnings were not required during his pre-arrest encounter with Trooper Eitel.
 {¶ 31} Appellant's first and second assignments of error are overruled.
 {¶ 32} Accordingly, the judgment of the Licking Municipal Court, Licking County, Ohio is affirmed.
Gwin, J., Wise, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking Municipal Court, Licking County, Ohio is affirmed. Costs to appellant.