[Cite as *State v. Spellacy*, 2019-Ohio-785.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106909**

**STATE OF OHIO**

PLAINTIFF-APPELLANT

vs.

**THOMAS K. SPELLACY**

DEFENDANT-APPELLEE

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-623580-A

**BEFORE:** Keough, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** March 7, 2019

**ATTORNEYS FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Frank Romeo Zeleznikar
       Andrew T. Gatti
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE**

John L. Reulbach
14701 Detroit Avenue, Suite 575
Lakewood, Ohio 44107


KATHLEEN ANN KEOUGH, J.:

**{¶1}** Appellant, the state of Ohio, appeals the trial court's decision granting defendant-appellee, Thomas K. Spellacy's, motion to suppress. For the reasons that follow, we reverse and remand for further proceedings.

**{¶2}** In November 2017, Olmsted Falls Police Officer Dennis McDonald initiated a traffic stop of a vehicle driven by Spellacy after Spellacy twice flashed his high-beam headlights while stopped at a traffic light. As a result of the stop, Spellacy was named in a one-count indictment charging him with operating a vehicle while under the influence ("OVI"), in violation of R.C. 4511.19(A)(1)(a). The charge was elevated to a third-degree felony because of a prior conviction for OVI, in violation of R.C. 4511.19(A)(1), on August 1, 2012. Spellacy was also cited for failure to dim headlights in violation of R.C. 4513.15(A)(1).

**{¶3}** Spellacy filed a motion to suppress, contending that the police officer did not have reasonable suspicion that a traffic offense occurred, to warrant the traffic stop. According to Spellacy, the two momentary flickers of his high-beam headlights while stopped at a traffic light did not violate the plain language of R.C. 4513.15(A)(1).

**{¶4}** Officer McDonald was the sole witness at the suppression hearing but the facts are not in dispute. On November 23, 2017, at approximately 7:51 p.m., Officer McDonald was seated in his parked police cruiser at a Sunoco gas station parking lot at the intersection of Columbia and Cook Roads. Officer McDonald testified that he was observing northbound and southbound traffic on Columbia Road and traffic entering the intersection from Cook Road.

**{¶5}** While observing traffic, Officer McDonald noticed four or five cars traveling southbound on Columbia Road stop at the red light at the intersection. He also observed traffic approaching northbound on Columbia Road stop at the traffic light. One of the northbound vehicles pulled into the left turn lane, while a second northbound vehicle pulled into the northbound curb lane. A few seconds after traffic had stopped in the southbound lane, Officer McDonald observed the second vehicle back activate its high-beam lights momentarily and then dim them. The traffic light changed, and traffic from Cook Road began to move through the intersection. The same vehicle once again activated its high-beam lights and turned them off. The time frame between the two flashes of high-beam lights was approximately 14 seconds. The driver of the vehicle in question was later identified as Spellacy.

**{¶6}** Thereafter, the light for the north and southbound traffic changed to green and traffic proceeded through the intersection. Spellacy turned right onto Cook Road, heading westbound. At this time, Officer McDonald activated his overhead lights in order to initiate a traffic stop. The officer's dash-cam video corroborated his testimony.

{¶7} Officer McDonald testified that he initiated the traffic stop "[t]o determine why the driver was flashing his lights at not only the vehicle in front of him, but into oncoming traffic." (Tr. 29.) He stated that he believed Spellacy had violated the headlight statute, which he understood as precluding drivers from "driving with [their] brights on." (Tr. 30.) Officer McDonald testified that when he initiated the traffic stop he only intended to give the driver a warning not to flash his bright lights while in traffic "because it was harming the traffic in front of him, also the traffic that was approaching him, his location." (Tr. 29-30.)

{¶8} However, when Officer McDonald approached the driver of the vehicle, he smelled a strong odor of alcohol and the driver had glassy eyes. After Spellacy refused to submit to any alcohol-detection tests, he was arrested and cited for OVI, in violation of R.C. 4511.19, and the traffic infraction of failure to dim headlights, in violation of R.C. 4513.15.

{¶9} On cross-examination, Officer McDonald admitted that Spellacy's vehicle was not in motion when he activated his high-beam lights, and that the vehicles facing toward Spellacy's vehicle were also stationary when he flashed his high-beam headlights. He further admitted that the flicker of the high beams lasted only for a second each time.

{¶10} In granting Spellacy's motion to suppress, the trial court specifically found that Spellacy was stopped at the traffic light when he flashed his high beams; thus he was "not approaching" oncoming traffic. Additionally, the trial court found that Spellacy did not continue to use his high beams upon proceeding through the intersection. Accordingly, the trial court, in its written opinion that was read in open court, found that "the facts relied upon by the officer were insufficient to establish a reasonable suspicion that a violation of the [law] occurred." (Tr. 73.)

**{¶11}** The state appealed pursuant to App.R. 12(K), raising as its sole assignment of error that the trial court erred in granting Spellacy's motion to suppress.

**{¶12}** Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. During a hearing on a motion to suppress evidence, the trial judge acts as the trier of fact and, as such, is in the best position to resolve factual questions and assess the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence. *State v. Guysinger*, 86 Ohio App.3d 592, 594, 621 N.E.2d 726 (4th Dist.1993). Accepting these facts as true, the appellate court independently reviews the trial court's legal determinations de novo. *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶ 19.

**{¶13}** It is well established that an officer may stop a motorist upon his or her observation that the vehicle in question violated a traffic law. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996). "[E]ven a de minimis traffic violation provides probable cause for a traffic stop." *Id*. at 9. "'Trial courts determine whether any violation occurred, not the extent of the violation.'" *Cleveland v. Martin*, 2018-Ohio-740, 107 N.E.3d 809 (8th Dist.), quoting *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, 771 N.E.2d 331, ¶ 27 (7th Dist.). Moreover, an officer is not required to prove the suspect committed an offense beyond a reasonable doubt or even satisfy the lesser standard of probable cause to believe that the defendant violated the law. *Westlake v. Kaplysh*, 118 Ohio App.3d 18, 20, 691 N.E.2d 1074 (8th Dist.1997).

{¶14} To conduct a constitutionally valid investigatory stop, a police officer must be able to point to specific and articulable facts that, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual has committed, is committing, or is about to commit a crime. *State v. Williams*, 51 Ohio St.3d 58, 60, 554 N.E.2d 108 (1990). The propriety of an investigative stop by a police officer must be viewed in light of the totality of the circumstances. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus.

{¶15} In this case, Officer McDonald initiated a traffic stop and issued a citation for violating R.C. 4513.15, which provides in relevant part:

> (A) Whenever a motor vehicle is being operated on a roadway or shoulder adjacent thereto during the times specified in section 4513.03 of the Revised Code, the driver shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons, vehicles, and substantial objects at a safe distance in advance of the vehicle, subject to the following requirements;
>
> (1) Whenever the driver of a vehicle approaches an oncoming vehicle, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver.

{¶16} On appeal, the state argues that the trial court erred in granting the motion to suppress because Officer McDonald had a reasonable and articulable suspicion that Spellacy violated a traffic offense to warrant the traffic stop. Specifically, the state contends that under the totality of the circumstances, Spellacy's two separate acts of briefly activating his high-beam lights were sufficient to justify the traffic stop. Alternatively, the state contends that even if Spellacy did not violate R.C. 4513.15, Officer McDonald had an objectively reasonable belief, although mistaken, that a traffic violation occurred, thus constituting reasonable suspicion to

justify a traffic stop. Moreover, the state claims that even if the stop was not justified, the trial court failed to consider the good-faith exception to the exclusionary rule.

{¶17} Spellacy contends that no traffic violation occurred because (1) his vehicle was stationary; (2) there were no oncoming vehicles; and (3) no testimony was presented that the headlights glared into the eyes of an oncoming driver. In support, Spellacy cites to *State v. Woods*, 86 Ohio App.3d 423, 621 N.E.2d 523 (4th Dist.1993), and *Kaplysh*, 118 Ohio App.3d at 20, 691 N.E.2d 1074, for the proposition that a momentary flicker of high-beam headlights does not constitute a violation of R.C. 4513.15, and thus is insufficient to constitute reasonable suspicion to justify a traffic stop. Accordingly, Spellacy maintains that the officer could not have had a reasonable or articulable suspicion that he violated a traffic offense and therefore, the trial court was correct in suppressing the traffic stop. Furthermore, Spellacy maintains that any purported mistake of law was not objectively reasonable because R.C. 4513.15 is clear, unambiguous, and has been scrutinized under appellate review.

{¶18} In *Woods*, the Fourth District held that the officers lacked a legal justification for a traffic stop when Woods was operating her vehicle with its high beams on while rounding a curve, but immediately activated her low beams when the oncoming vehicle came in view. The court determined that Woods's high beams, as with any driver's, would be activated for a moment when the approaching car came into view before she could activate her low beams. The court determined that the "momentary flick onto high beam followed immediately by a return to low beam cannot be elevated to a violation of R.C. 4513.15." *Id*. at 426. The court stated that suppression of the stop should have been granted because Woods's conduct did not violate the law — "nothing to show there was conduct that the statute was designed to prevent, i.e., glaring rays projected into the eyes of an oncoming driver." *Id*. at 425.

**{¶19}** In *Kaplysh*, this court distinguished *Woods* by concluding that the officer observed the defendant use his high beams continuously, for at least a minute, unlike in *Woods*, which involved only a momentary flicker of high beams. In *Kaplysh*, evidence showed that the officer, who was seated in his stopped vehicle, observed a vehicle with its high beams on driven by Kaplysh approaching an intersection. The vehicle stopped behind another vehicle, and when the traffic light changed from red to green, Kaplysh proceeded through the intersection and switched to low beam headlights. The officer testified that he observed the bright lights on Kaplysh's vehicle for at least a minute and had to squint because of the intensity of the lights. The officer concluded that Kaplysh violated the Westlake ordinance requiring drivers to dim their headlights when they approached oncoming vehicles. The officer conducted a traffic stop, discovered Kaplysh to be under the influence of alcohol, and arrested him. Kaplysh filed a motion to suppress, contending that the officer did not have sufficient grounds to justify the warrantless stop. The trial court agreed.

**{¶20}** In a split decision, this court concluded that "a driver violates the ordinance by continuing to use the high-beam headlights of his vehicle 'upon approaching' such traffic. The ordinance requires the driver to shift to the low beam lights at the latest when the glaring rays project into the eyes of an oncoming driver." *Id*. at 20.

**{¶21}** However, this court specifically rejected the argument that the officer's stationary car was not "oncoming," finding that "[t]his argument ignores the fact that [the officer], as well as the vehicle in front of his, was moving immediately prior to stopping at the traffic light as defendant approached from the opposite direction." *Id*. at 21. This court found that "the evidence was sufficient to establish, at a minimum, a reasonable suspicion that the defendant drove with his high beams illuminated in violation of the ordinance."

> The purpose of the ordinance is to promote safety by preventing any unnecessary visual impairment resulting from the glare of high beams — an impairment that could affect a driver whether he be moving at a high speed on a country road or about to stop or start up at an intersection, where pedestrians are likely to cross. The trial court was mistaken when it interpreted the ordinance as not requiring lights to be dimmed until a car passes an oncoming vehicle. As *Woods* correctly saw, that glare occurs much earlier and so does the obligation to lower one's beams.

*Id*. at 21.

{¶22} In further addressing the notion of an "oncoming driver," the First District held that the use of high-beams, although continuously, did not violate R.C. 4513.15 because the offending vehicle was not "approaching an oncoming vehicle." *State v. Howell*, 1st Dist. Hamilton No. C-170158, 2018-Ohio-591. The *Howell* defendant was stopped because she was driving with her high beams activated while following a state trooper. Upon conducting the stop, the officer discovered that she was under the influence of alcohol. The First District concluded that the officer did not have reasonable suspicion to justify the stop because the vehicle using the high beams must be approaching an oncoming vehicle, not following behind the vehicle while using the high beams. The court also summarily rejected the argument that the officer's mistake of law was reasonable because the court stated that the headlight law was unambiguous and thus, there could be no mistake of law.

{¶23} Despite the First District's finding that the headlight statute is clear and unambiguous, the Second District in *State v. Fickert*, 2d Dist. Clark No. 2018-CA-15, 2018-Ohio-4349, addressed the same headlight statute and found that the officer's mistake of law was reasonable. In *Fickert*, the officer initiated a traffic stop after Fickert flashed her "brights" at him shortly before passing him while traveling in the opposite direction. The traffic stop resulted in Fickert's arrest for OVI. The trial court granted Fickert's motion to suppress, finding that the flicker of high beams lasted approximately a second and did not appear to create any

visual impairment contemplated by the statute, thus making the stop unreasonable. On appeal, the court discussed prior case law concerning the use of high beams, finding that most of the cases involved drivers traveling with high beams activated who failed to dim them for oncoming traffic. However, the court also recognized the holding in *Woods* that a momentary flicker of high beams followed immediately by a return to low beam cannot be elevated into a violation of R.C. 4513.15 to justify reasonable suspicion. *Id*. at ¶ 16, 23.

**{¶24}** The Second District concluded that it did not need to reconcile the competing case law or determine whether Fickert actually violated R.C. 4513.15, recognizing that even if Fickert's conduct in momentarily flashing her high beams into oncoming traffic was in violation of the law, the United States Supreme Court's decision in *Heien v. North Carolina*, 574 U.S. __, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014), allows for reasonable mistakes of law. "'A police officer's objectively reasonable belief that a traffic violation has occurred, including reasonable mistakes of law, can constitute reasonable suspicion to justify a traffic stop.'" *Fickert* at ¶ 20, quoting *State v. Kirkpatrick*, 2017-Ohio-7629, 97 N.E.3d 871, ¶ 6 (1st Dist.), citing *Heien* at 536. Accordingly, upon reviewing the language of R.C. 4513.15(A)(1) and considering the totality of the circumstances, the Second District held that the motion to suppress should have been denied because the officer's objectively reasonable belief that a violation occurred, even if mistaken, could still constitute reasonable suspicion to justify the stop. *Fickert* at ¶ 22-23.

**{¶25}** In *Heien*, the United States Supreme Court reviewed the propriety of a traffic stop where the officer stopped a vehicle because one of the vehicle's two brake lights was not working. The officer believed that the law in North Carolina required both brake lights to be operable. This belief turned out to be a mistake of law by the officer, because a single working brake light was all that the law required. After reviewing the language of the relevant statute,

the court determined that the officer's mistake about the brake-light law was objectively reasonable based on the circumstances. *Id.* at 540. As a result, the court found the officer had reasonable suspicion to justify the traffic stop. *Id.*

{¶26} The United States Supreme Court stated:

> We have repeatedly affirmed, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. [373], [381], 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) (some internal quotation marks omitted). To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them "fair leeway for enforcing the law in the community's protection." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). We have recognized that searches and seizures based on mistakes of fact can be reasonable. The warrantless search of a home, for instance, is reasonable if undertaken with the consent of a resident, and remains lawful when officers obtain the consent of someone who reasonably appears to be but is not in fact a resident. *See Illinois v. Rodriguez*, 497 U.S. 177, 183-186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). By the same token, if officers with probable cause to arrest a suspect mistakenly arrest an individual matching the suspect's description, neither the seizure nor an accompanying search of the arrestee would be unlawful. *See Hill v. California*, 401 U.S. 797, 802-805, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). The limit is that "the mistakes must be those of reasonable men." *Brinegar, supra*, at 176, 69 S.Ct. 1302.

But reasonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

*Heien* at 536.

{¶27} In this case, Spellacy readily admits in his appellate brief that "McDonald was simply mistaken in his belief that two momentary flicks of one's bright lights, particularly under the facts described, was a violation of the law." (Appellant's brief at 6.) Nevertheless, Spellacy contends that Officer McDonald's mistake of law was not *objectively reasonable* under *Heien* because, unlike the law at issue in *Heien*, the headlight law here is clear, unambiguous, and has been interpreted by reviewing courts that momentary flickers of high-beam headlights followed immediately by a return to low beam does not constitute a violation of R.C. 4513.15(A)(1).

{¶28} The case law in Ohio interpreting R.C. 4513.15(A)(1) and similarly worded municipal ordinances, seems to hinge on specific facts — whether the vehicle using high beams stationary or moving; whether the impeded vehicle stationary, approaching, or in front of the vehicle using high beams; whether there was testimony of vision impairment. Even applying these specific facts, however, there is no clear consensus on when a motorist violates R.C. 4513.15(A)(1) or what facts are sufficient to justify "reasonable suspicion." *See, e.g., State v. Hinton*, 2d Dist. Clark No. 2833, 1992 Ohio App. LEXIS 1202 (Mar. 16, 1992) (failure to dim to oncoming traffic sufficient to justify stop); *State v. Barnes*, 2d Dist. Montgomery Nos. 15159 and 15160, 1996 Ohio App. LEXIS 1404 (Apr. 5, 1996) (continuous use of high beams despite no oncoming traffic sufficient to justify stop); *Kaplysh*, 118 Ohio App.3d 18, 691 N.E.2d 1074, (observation of use of high beams even when oncoming traffic stationary sufficient to justify stop); *State v. Burghardt*, 6th Dist. Erie No. E-98-060, 1999 Ohio App. LEXIS 3318 (July 16, 1999) (failure to dim even after police office signaled with own brights); *State v. Mullins*, 5th Dist. Licking No. 2006-CA-00019, 2006-Ohio-4674 (failure to dim caused glare in oncoming driver's eyes sufficient to justify stop); *State v. Gist*, 2d Dist. Montgomery No. 22823,

2009-Ohio-4791 (failure to dim sufficient even where no evidence of glare complained of); *Howell*, 1st Dist. Hamilton No. C-170158, 2018-Ohio-591 (failure to dim when following vehicle insufficient to justify stop).

**{¶29}** Moreover, the cases interpreting R.C. 4513.15 or similar municipal ordinances were either decided prior to *Heien* or did not consider or conduct an "objectively reasonable mistake of law" analysis. Additionally, the clear and unambiguous wording of R.C. 4513.15 actually prohibits *any* use of high beam lights, even a momentary flicker, when approaching oncoming traffic. *See, e.g., State v. Westmiller*, 2007 ND 52, 730 N.W.2d 134, ¶ 11 (interpreting similar North Dakota statute and holding that the statute does not make any exceptions for the momentary flashing of high beams).

**{¶30}** We also find that the *Heien* "objectively reasonable" test has been applied by Ohio courts that involve statutes or ordinances that had also previously been interpreted on appellate review. *See Kirkpatrick*, 2017-Ohio-7629, 97 N.E.3d 871 (officer's belief that a driver's wide left turn violated R.C. 4511.36 constituted reasonable mistake of law, even after the court determined that the law was unambiguous; the stop did not warrant suppression); *State v. Hill*, 5th Dist. Stark Nos. 2015 CA 00078 and 2015 CA 00079, 2016-Ohio-1510 (officer's misinterpretation of a local stop-sign ordinance was objectively reasonable; similar stop sign law interpreted as unambiguous).

**{¶31}** Accordingly, based on *Heien*, we agree with the state's position that even if Spellacy's two momentary flickers of his high-beam headlights spanning 14 seconds apart were not sufficient to constitute a violation of R.C. 4513.15(A)(1), the traffic stop at issue was still lawful if Officer McDonald reasonably, albeit mistakenly, believed that a violation of the statute had occurred.

{¶32} "Thus the question whether a traffic stop violates the Fourth Amendment * * * requires an objective assessment of a police officer's actions in light of the facts and circumstances." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 14. "The existence of probable cause [or reasonable suspicion] depends on whether an objectively reasonable police officer would believe that [the driver's] conduct * * * constituted a traffic violation, based on the totality of the circumstances known to the officer at the time of the stop." *Id.* at ¶ 16.

{¶33} In this case, Officer McDonald testified that he observed Spellacy activate his high beams on two different occasions while stopped behind another vehicle at a red light. The dash-cam video shows that the two flashes occurred briefly, approximately for one second, and approximately 14 seconds apart. Officer McDonald testified that he initiated the traffic stop to "determine why he was using his bright lights" and that he believed Spellacy violated the traffic law because "you can't drive with your bright lights on."

{¶34} When reviewing the language of R.C. 4513.15(A)(1) and considering Officer McDonald's testimony, an objectively reasonable officer could have concluded that Spellacy violated R.C. 4513.15(A)(1) when, on two separate occasions, he flashed his high-beam lights while stopped behind another vehicle at a busy intersection. Moreover, Spellacy was operating his vehicle at a time and in an area where the use of high beams would be unnecessary or unwarranted, and while he was stopped at a stoplight. Officer McDonald stated that he conducted the investigatory stop to see "why he was using his high beams." Therefore, at the very least, the totality of the circumstances would permit the officer to effectuate a traffic stop for the purposes of obtaining explanatory information why Spellacy was flashing his high beams on two separate occasions. *See, e.g., State v. Carlile*, 2d Dist. Montgomery No. 17270, 1999 Ohio

App. LEXIS 2181 (May 14, 1999) (flicker of high beams common signal to drivers; officer as a community caretaker acted reasonably initiating traffic stop; police-citizen contact objectively reasonable).

**{¶35}** Based on the totality of the circumstances, even if Officer McDonald was mistaken that Spellacy violated R.C. 4513.15, or the evidence would be insufficient to prove the elements of R.C. 4513.15 beyond a reasonable doubt, we find that Officer McDonald had an objectively reasonable belief that a traffic violation occurred, thus constituting reasonable suspicion to justify the traffic stop. Accordingly, we find that the trial court erred in granting Spellacy's motion to suppress.

**{¶36}** Judgment reversed and remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

———————

KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, SR., J., CONCUR